**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVION**

| | | |
|---|---|---|
| DALLAS BUYERS CLUB, LLC, | ) | |
| Plaintiff, | ) | Case No. 14-cv-3517 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| JIMMY KAWA, ELLIS QUALLS, | ) | **Hon. Matthew F. Kennelly** |
| BEN LAWSON, and BRYAN NARBERT | ) | U.S. Dist. Court Judge |
| Defendants. | ) | |

**MOTION TO SEVER DEFENDANT BRYAN NARBERT, FORMERLY KNOWN AS DEFENDANT JOHN DOE #18**

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, Defendant BRYAN NARBERT ("Defendant"), formerly known as Defendant John Doe #18, by Counsel, respectfully moves this Court for the entry of an order dropping him as a party to this action.

In their Amended Complaint, Plaintiff alleges copyright infringement through BitTorrent protocol. (Amended Complaint, p. 5, ¶¶ 16-22). The BitTorrent protocol – a peer-to-peer file sharing process – interconnects hundreds of millions of users on the internet across the entire planet. Because of the expansive scope of BitTorrent users and nature of the process's operation, *the probability that any single or series of transactions could connect any, much less all, of the*

*four defendants named in Plaintiff's Amended Complaint is infinitesimally small.*[1] Further, assuming, *arguendo*, that somehow the four Defendants *did* engage in the same series of transactions together, *Plaintiff does not have the means or methodology to reliably demonstrate this allegation*.[2]

Because of this, joinder of Defendant with the other three defendants in Plaintiff's Amended Complaint is inappropriate under both the Federal Rules of Civil Procedure as well as Seventh Circuit precedent. As such, Defendant now moves this court to sever.

## I. LEGAL STANDARD

Multiple defendants may be joined in a single action if a plaintiff seeks relief: (i) "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and, (ii) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). A court may add or drop a party on terms that are just at any time. Fed. R. Civ. P. 21. A court may also sever any claim against a party. Fed. R. Civ. P. 21.

The Seventh Circuit has made clear that, in *addition* to the requirements of Rule 20, permissive joinder of a party must "comport with the principles of fundamental fairness." *Chavez v. The Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001); *Intercon Research Associates, Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982) (quoting *Desert Empore Bank v. Ins. Co. of*

---

[1] " The likelihood that there is any series of peer-to-peer connections that could link all 4 peers to at least one other named peer is 0.000000337%, or roughly a 1 in 300 million chance8" Decl. Delvan Neville (Apr. 13, 2015), ¶¶ 12.

[2] Decl. Delvan Neville, ¶¶ 4, 12, 15, 21.

*N. Am*. 623 F.2d 1371, 1375 (9th Cir. 1980)); Fed. R. Civ. P. 20(a)(2)(A). This "fundamental fairness" consideration contains inquiries in to (1) a party's motives for seeking joinder; (2) the existence of distinct factual issues and unique defenses; (3) confusion and complication of the issues for the parties; (4) judicial economy and case management; (5) prejudice, and (6) delay and expense. *Chavez*, 251 F.3d at 632; *Intercon*, 696 F.2d at 56.

In *AF Holdings*, the United States Court of Appeals for the District of Columbia had occasion to apply the rules of permission joinder to BitTorrent cases. *AF Holdings, LLC v. Does 1 – 1058*, 752 F.3d 990 (D.C. Cir. 2014). The Court explicitly rejected the argument that the nature of the BitTorrent file-sharing protocol, alone, was sufficient to presume a shared transaction for joinder purposes. *Id.* at 998. Rather, the court insisted that individuals "participate in the same swarm at the same time" to be considered "the same series of transactions within the meaning of Rule 20(a)." *Id.* "[S]imply committing the same type of violation in the same way" or "access[ing] the same file through BitTorrent provides an insufficient basis for joinder." *Id.* (citing *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11cv345, at *7 (E.D. Va. 2011); and *Malibu Media LLC v. Does 1-11*, 286 F.R.D. 113, 116 (D.D.C. 2012)).

Because *AF Holdings* demonstrates the correct application of the rules of permissive joinder as applied to the BitTorrent protocol, this Court should find it instructive and hold that Plaintiff's joinder of Defendant is improper.

## II. FACTS AND APPLICATION

Plaintiff filed its initial Complaint and Exhibits on May 14, 2014. Plaintiff's Exhibit C is a chart containing the infohash, IP addresses, "Hit Dates," Internet Service Provider ("ISP") names,

cities, and counties for 25 IP addresses. Plaintiff filed their Amendment Complaint on March 19, 2015. Within their Amended Complaint, Plaintiff alleges Defendant was assigned the IP address 98.213.3.140 (the 18th entry in Exhibit C to the original Complaint) by their ISP – Comcast.

Plaintiff has not shown that Defendant and the remaining three defendants participated in the same BitTorrent swarm at the same time. Further, presupposing, *arguendo* that all four defendants did participate in the same swarm at the same time, Plaintiff lacks a reliable method to show that this occurred. As such, severance of Defendant is proper.

## A. DEFENDANT CANNOT BE PROPERLY JOINED UNDER RULE 20

*The probability that all Defendants were part of the same transaction is infinitesimally small*

Delvan Neville ("Mr. Neville") is an expert on matters that relate to BitTorrent investigation and the monitoring of BitTorrent swarms. Decl. Delvan Neville (April 13, 2015), ¶¶ 2, 3. He is the owner of Amaragh Associates, LLC. (a digital forensics company with a specialization in BitTorrent investigation), the author / creator of EUPSC2k (a BitTorrent monitoring suite), an AccessData Certified Examiner, and an experienced investigator of companies associated with BitTorrent litigation plaintiffs. *Id*., ¶ 2, 5-6.

Plaintiff claims that the IP addresses for their mass-Doe litigation was provided by the Crystal Bay Corporation. Decl. Daniel Macek in Support of Plaintiff's Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference (May 23, 2014), ¶ 19 ("Crystal Bay Corporation determined that the Doe Defendants identified in Complaint Exhibit B were using the ISPs listed in the exhibit to gain access to the Internet and distribute and make available for distribution and copying Plaintiff's copyrighted motion picture."). Because (1) Mr. Neville has monitored and analyzed BitTorrent swarms associated with Crystal Bay Corporation in the past; and (2) these

previous monitoring efforts were "directly inspired by mass-Doe litigation" like the case at hand, Mr. Neville's experience and expertise are directly relevant to the facts here. Decl. Delvan Neville, ¶ 11.

From "mid-September of 2013 through October 3, 2013, [Mr. Neville] performed BitTorrent monitoring and analysis work for the Electronic Frontier Foundation (EFF)" during which he "monitored 24 swarms associated with IPP International-backed lawsuits, Crystal Bay Corporation (CBC) backed lawsuits, and swarms legally redistributing open-source software." *Id.*, ¶ 5. Mr. Neville's BitTorrent monitoring program – EUPSC2k – is designed to generate data for analyzing: (a) The average time the typical person ("peer") stays connected to any other peers within the same swarm; (b) The average time the typical peer stays connected within the same swarm as a "leecher;"[3] (c) The average time the typical peer stays connected within the same swarm as a "seeder;"[4] and (d) The average total number of other peers the typical peer contacts over the course of their time within the swarm. *Id.*, ¶¶ 6-9.

At the request of Counsel for Defendant, Mr. Neville has reviewed (1) Plaintiff's Amended Complaint; (2) all of Plaintiff's relevant Exhibits; and (3) the Declaration of Daniel Macek. Based upon his past research work, technical expertise, and analysis of the relevant materials in this case, Mr. Neville concludes as follows:

---

[3] "A leecher is someone who is downloading (and uploading) a file. You are a leecher if you do not have a complete copy of the file you're trying to get." Ernesto, *BitTorent Jargon*, TORRENTFREAK (March 30, 2006), https://torrentfreak.com/bittorrent-jargon/.

[4] "A seeder is someone who has a complete version of the file you are downloading. If there are no seeders, [users] probably won't be able to get the file." Ernesto, *BitTorent Jargon*, TORRENTFREAK (March 30, 2006), https://torrentfreak.com/bittorrent-jargon/.

(a) "The likelihood that there is any series of peer-to-peer connections that could link all 4 peers to at least one other named peer is 0.000000337%, or roughly a 1 in 300 million chance." *Id.*, ¶ 12.[5]

(b) "As every communication between an EUPSC2k node and IPP/CBC demonstrate that they do not support PEX messages, even if the named peers in this case did engage in the same series of transactions together, Plaintiff will not be able to demonstrate that this occurred." *Id.*, ¶ 21.

Mr. Neville's first conclusion – paragraph (a) – is essentially the end of the factual inquiry as to whether joinder is proper in the case. The likelihood that these defendants engaged in the "same transaction or series of transactions" as required under *AF Holdings* is "0.000000337%, or roughly a 1 in 300 million chance" – a figure so infinitesimally small as to be pragmatically impossible. Sustaining joinder under such fantastically improbable circumstances is inappropriate under Rule 20's plain meaning and would dangerously erode the rule's intended purpose.

Mr. Neville's second conclusion – paragraph (b) – is also of special importance to the issue of

---

[5] " This probability was calculated on the basis that any arrangement of communication that links each peer in this suit to at least one other peer would be sufficient. Peer #1 would have a 99.95% chance of not being connected to Peer #2 (100% - 0.05%), and so on for each other Peer. The chance Peer #1 saw none of the others is then 99.85% (99.95% raised to the 3rd power). Therefore, the chance that Peer #1 saw one or more of the others is 0.15% (100% - 99.85%). The likelihood that all Peer each saw one or more of the others is then 0.000000337% (0.15% raised to the 3rd power). This calculation omits the finite population correction factor, which would only become relevant when the number of Peer approached the total number of members in the swarm over that time period. Note that as the number of named Peer increases, the likelihood every Peer is linked to at least one other Peer decreases even though the likelihood that just one of all the named Peer is linked to a single other Peer increases i.e. a quasi-reversal of the Birthday Problem. In the language of the Birthday Problem, here we are not interested in whether there is just one pair of Peer with the same "birthday", but whether all Peer have a birthday in common with at least one other Peer." Decl. Delvan Neville, n. 8.

joinder. By identifying the limitations in Crystal Bay Corporation's BitTorrent Peer Exchange monitoring,[6] Mr. Neville has demonstrated that Plaintiff cannot know, much less record, the IP addresses of any other peers actively connected to other peers within the swarms they monitored. As such, even assuming, *arguendo*, that the named defendants in this case *did* engage in the same series of transactions together, Mr. Neville is correct in concluding that "Plaintiff will not be able to demonstrate that this occurred." *Id*., ¶ 21.

**B. ADDITIONAL FACTORS REQUIRE DROPPING DEFENDANT AS A PARTY FROM THIS ACTION.**

In addition to their failure under Rule 20, Plaintiff's improper joinder of Defendant with the three other defendants does not "comport with the principles of fundamental fairness" as required by the Seventh Circuit. *Chavez,* 251 F.3d 612; *Intercon,* 696 F.2d 53.

*Plaintiff's motives for seeking joinder are improper*

As of today, DALLAS BUYS CLUB, LLC is Plaintiff to 31 open suits naming well over 500 defendants in the Northern District of Illinois.[7] As already demonstrated, Plaintiff's investigator, Crystal Bay Corporation, lacks the technological capability to provide Plaintiff with evidence that would justify joinder of these defendants, much less a *prima facie* claim for infringement. Decl. Delvan Neville ¶ 14-21. Given the massive scope of their legal action and the technical

[6] To clarify, Peer Exchange ("PEX") is: "[A]n extended BitTorrent protocol whereby, following a handshake message between two peers, the peers will notify each other of the [IP addresses] of all other peers they are currently connected to within the same swarm, and subsequently update in later messages when any of those peers have disconnected. The purpose of PEX is to allow swarm members to discover each other in addition to the use of one or more trackers and/or Distributed Hash Table (DHT). Decl. Delvan Neville,¶ 7.

[7] [Ex. A] DALLAS BUYERS CLUB, LLC - Current NDIL Litigation.

impossibility of proving their case, what could explain this tidal wave of mass-joinder Doe litigation?

The answer is simple. Plaintiff's motives for seeking joinder is not based on any real intent to litigate a common copyright infringement claim against the four named defendants. Rather, Plaintiff's goal is to (1) avoid paying individual filing fees against each defendant; and (2) leverage this cost-savings and known abuse of judicial process to more cost-effectively intimidate frightened defendants into settling their (often baseless) claims through out-of-court letter writing campaigns. Plaintiff is only the latest and most egregious example of this abuse of judicial process colloquially described as "copyright trolling."[8] Plaintiff's activities throughout the federal judicial system as well as their unwillingness to actually litigate their improper joinder of defendants, Doe and named, has been extensively documented.[9] In light of Plaintiff's inappropriate motives, joinder of Defendant is improper.

## III. CONCLUSION

For all of the foregoing reasons, this Court should grant Defendant's Motion to Sever and the relief requested herein.

WHEREFORE, Defendant BRYAN NARBERT, formerly known as John Doe #18, respectfully moves this Court to enter an order granting Defendant's Motion to Sever, and

---

[8] *Copyright Trolls*, ELECTRONIC FREEDOM FOUNDATION, https://www.eff.org/issues/copyright-trolls.

[9] *Copyright Troll Michael Hierl (Dallas Buyers Club LLC) Dismisses ANOTHER Doe To Avoid Questions – 1:14-cv-02162 (IL)*, DIETROLLDIE, (September 26, 2014), http://dietrolldie.com/2014/09/26/copyright-troll-michael-hierl-dallas-buyers-club-llc-dismisses-another-doe-to-avoid-questions-114-cv-02162-il/.

dropping Defendant as a party from this lawsuit, and vacating the Court's Order Granting Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference and Plaintiff's third party subpoena as to Defendant, and if the Court denies Defendant's Motion to Sever, that the Court certify its order denying Defendant's motion for immediate appeal; and for all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Scott Kane Stukel*

Scott Kane Stukel, # 6317252
kanecommunitylaw@gmail.com
2536 N. Sawyer Ave, APT 204
Chicago, Illinois 60647
Phone (734) 564-2821

*Attorney for Bryan Narbert*

**CERTIFICATE OF SERVICE**

TO: Michael A. Hierl
Hughes Socol Piers Resnick & Dym Ltd
Three First National Plaza
70 West Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
mhierl@hsplegal.com

Todd Sheldon Parkhurst
Hughes Socol Piers Resnick & Dym, Ltd.
70 West Madison Street, Suite 4000
Chicago, IL 60602
(312) 604-2626
tparkhurst@hsplegal.com

I hereby certify that on April 13, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties by operation of the Court's electronic filing system.

*/s/ Scott Kane Stukel*
Scott Kane Stukel